JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil coversheet and the informtion contained herein neither replace nor supplent the filing and service of pleadngs or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| KAMIAN SCHWARTZMAN | Rogue International Talent Group, INC. d/b/a/ Rogue Entertainment, LLC d/b/a Rogue Talent Agency, Roger Paul, Inc., Roger Paul, High Idea Corp, LLC d/b/a High Ideas, Inc. & Dustin Diamo |

**(b)** County of Residence of First Listed Plaintiff    PHILADELPHIA      County of Residence of First Listed Defendant   New York
*(EXCEPT IN U.S. PLAINTIFF CASES)*                                               *(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:       IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*            Attorneys *(If Known)*
Gaetan Alfano, Esq., Pietragallo Gordon Alfano Bosick & Raspanti, 1818 Market Street, Ste. 3402, Philadelphia, PA 19103 (215-320-6200)

## II. BASIS OF JURISDICTION    *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 U.S. Government<br>     Plaintiff | ☒ 3 Federal Question<br>     *(U.S. Government Not a Party)* | |
| ☐ 2 U.S. Government<br>     Defendant | ☐ 4 Diversity<br>     *(Indicate Citizenship of Parties in Item III)* | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                  *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place<br>of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place<br>of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment<br>    & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted<br>    Student Loans<br>    (Excl. Veterans)<br>☐ 153 Recovery of Overpayment<br>    of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product<br>    Liability<br>☐ 320 Assault, Libel &<br>    Slander<br>☐ 330 Federal Employers'<br>    Liability<br>☐ 340 Marine<br>☐ 345 Marine Product<br>    Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle<br>    Product Liability<br>☐ 360 Other Personal<br>    Injury<br>☐ 362 Personal Injury -<br>    Med. Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury -<br>    Product Liability<br>☐ 367 Health Care/<br>    Pharmaceutical<br>    Personal Injury<br>    Product Liability<br>☐ 368 Asbestos Personal<br>    Injury Product<br>    Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal<br>    Property Damage<br>☐ 385 Property Damage<br>    Product Liability | ☐ 625 Drug Related Seizure<br>    of Property 21 USC 881<br>☐ 690 Other<br><br>**LABOR**<br>☐ 710 Fair Labor Standards<br>    Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical<br>    Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc.<br>    Security Act | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal<br>    28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and<br>    Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☒ 850 Securities/Commodities/<br>    Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information<br>    Act<br>☐ 896 Arbitration |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/<br>    Accommodations<br>☐ 445 Amer. w/Disabilities -<br>    Employment<br>☐ 446 Amer. w/Disabilities -<br>    Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate<br>    Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee -<br>    Conditions of<br>    Confinement | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 463 Habeas Corpus -<br>    Alien Detainee<br>    (Prisoner Petition)<br>☐ 465 Other Immigration<br>    Actions | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff<br>    or Defendant)<br>☐ 871 IRS—Third Party<br>    26 USC 7609 | ☐ 899 Administrative Procedure<br>    Act/Review or Appeal of<br>    Agency Decision<br>☐ 950 Constitutionality of<br>    State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original
    Proceeding
☐ 2 Removed from
    State Court
☐ 3 Remanded from
    Appellate Court
☐ 4 Reinstated or
    Reopened
☐ 5 Transferred from
    another district
    *(specify)*
☐ 6 Multidistrict
    Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. SEC 754
Brief description of cause:
SEC Receivership Asset Recovery

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION    **DEMAND $**    CHECK YES only if demanded in complaint:
UNDER F.R.C.P. 23    136,057.16    **JURY DEMAND:**   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*    JUDGE   Berle M. Schiller    DOCKET NUMBER   10-cv-03130

DATE   09/12/2012     SIGNATURE OF ATTORNEY OF RECORD   *Gaetan J. Alfano /S/*

**FOR OFFICE USE ONLY**

RECEIPT #      AMOUNT      APPLYING IFP      JUDGE      MAG. JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | |
|---|---|
| Kamian Schwartzman | CIVIL ACTION |
| v. | |
| Rogue International Talent Group, Inc., et al. | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a)   Habeas Corpus -- Cases brought under 28 U.S.C. § 2241 through § 2255.          (   )

(b)   Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.          (   )

(c)   Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. (   )

(d)   Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.          (   )

(e)   Special Management -- Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)          ( X )

(f)   Standard Management – Cases that do not fall into any one of the other tracks.          (   )

| | | |
|---|---|---|
| 09/12/2012 | Gaetan J. Alfano, Esq. | Plaintiff |
| Date | Attorney-at-law | Attorney for |
| | | |
| 215-320-6200 | (215)981-0082 | gja@pietragallo.com |

(Civ. 660) 10/02

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff:: 1818 Market Street, Suite 3402, Philadelphia, PA 19103

Address of Defendant: (Street) 876 Kennedy Blvd., Apt. 2A, Bayonne, NJ 07002

Place of Accident, Incident or Transaction: _____

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))    Yes☐  No☒

Does this case involve multidistrict litigation possibilities?    Yes☐  No☒

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes☒  No☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes☒  No☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?    Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes☐  No☒

CIVIL: (Place ✓ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☒ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
   (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, _____Gaetan J. Alfano_____ , counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: 9/12/12      _Gaetan J. Alfano /s/_      32971
                   Attorney-at-Law              Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 9/12/12      _Gaetan J. Alfano /s/_      32971
                   Attorney-at-Law              Attorney I.D.#

CIV. 609 (5/2012)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

KAMIAN SCHWARTZMAN, in his capacity as
Receiver FOR the Receivership Estate Established by
the Order entered September 13, 2010 in *S.E.C. v.
Robert Stinson, Jr., et al.*, Civil Action No. 10-03130
(BMS),

          Plaintiff,

    v.

ROGUE INTERNATIONAL TALENT GROUP,
INC., d/b/a ROGUE ENTERTAINMENT, LLC, d/b/a
ROGUE TALENT AGENCY, ROGER PAUL, INC.,
ROGER PAUL, HIGH IDEA CORP, LLC d/b/a HIGH
IDEAS, INC., and DUSTIN DIAMOND

          Defendants.

CIVIL ACTION NO.

_____

**RECEIVER'S ANCILLARY COMPLAINT**

Receiver Kamian Schwartzman ("Receiver"), by and through his counsel, Pietragallo

Gordon Alfano Bosick & Raspanti, LLP, hereby files this Ancillary Complaint against Rogue

International Talent Group, Inc. d/b/a Rogue Entertainment, LLC, d/b/a Rogue Talent Agency

(collectively, "Rogue"), Roger Paul, Inc. ("RPI"), Roger Paul ("Paul"), High Idea Corp., LLC

d/b/a High Ideas. Inc. ("High Idea Corp.") and Dustin Diamond ("Diamond").  In support of this

Complaint, the Receiver states as follows:

**INTRODUCTION**

1.     This action is brought pursuant to the September 10, 2010 Order Establishing

Receivership Estate entered by the Honorable Berle M. Schiller in the underlying action brought

by the Securities and Exchange Commission ("S.E.C.") against Defendants Robert Stinson, Jr.

1

("Stinson"); Life's Good, Inc.; Life's Good S.T.A.B.L. Mortgage Fund, LLC; Life's Good High

Yield Mortgage Fund, LLC; Life's Good Capital Growth Fund, LLC; IA Capital Fund, LLC; and

Keystone State Capital Corporation (collectively, the "S.E.C. Defendants"), as well as Relief

Defendants First Commonwealth Service Company; Susan L. Stinson; Christine A. Stinson;

Michael G. Stinson; and Laura Marable (collectively, the "S.E.C. Relief Defendants") (S.E.C.

Defendants and S.E.C. Relief Defendants collectively known hereafter as the "Source Entities"),

styled *Securities and Exchange Commission v. Robert Stinson, Jr., et al.*, Civil Action No. 10-

03130. *See* Document Nos. 1 and 29 in *Stinson*.

    2.    The Receiver was appointed by separate Order on September 13, 2010. *See*

Document No. 30 in *Stinson*.

    3.    The S.E.C.'s underlying action arose out of the fraudulent Ponzi scheme Stinson

operated through certain of the Source Entities from approximately 2006 through June 29, 2010,

when the S.E.C. filed its Complaint and requested a temporary restraining order and an order

freezing the assets of the Source Entities.  Ultimately, between July 12, 2010 and July 23, 2010,

the Source Entities all entered into Orders by consent granting the S.E.C. a preliminary

injunction and freezing the assets of the Source Entities.

    4.    On June 20, 2011, the Court entered summary judgment against certain of the

Source Entities and found, *inter alia*, that Robert Stinson, Jr. operated Life's Good, Inc. and the

Life's Good Funds as a Ponzi scheme. *See Stinson*, 2011 WL 2462038 at *4 (E.D. Pa June 20,

2011).

    5.    The Order Establishing Receivership Estate empowers and obligates the Receiver

to take control of all the assets of the Source Entities including monies, securities, choses in

action, and properties, real and personal, tangible and intangible, of whatever kind and wherever

situated (the "Receivership Property"). *See* Document No. 29 in *Stinson* ¶¶ 1, 5.  The Receiver is further obligated, pursuant to the Order Establishing Receivership Estate, to use reasonable efforts to determine the nature, location and value of all Receivership Property, take such action as necessary to preserve the value of Receivership Property, and institute lawsuits for the benefit of the Receivership Estate. *See id.* ¶ 20.

6.      Between approximately November 2009 and July 2010, Paul and Rogue received benefits in excess of $136,057.16 from the Life's Good Funds and Life's Good, Inc.

7.      First, Life's Good Funds and/or Life's Good, Inc., provided Rogue with payments for office space, legal representation, accounting services, insurance and other services at no cost to Paul or Rogue.

8.      In addition, between November 2009 and July 2010, Life's Good, Inc. paid the salaries of individuals employed by, and working full-time, for Rogue.

9.      Moreover, Life's Good Funds and/or Life's Good, Inc. transferred $20,008.53 directly to Paul himself.

10.     Finally, on or about March 8, 2010, Defendant High Idea Corp. and/or Defendant Diamond received a loan for approximately $40,000.00 from Rogue and Paul, the payment of which originated from Life's Good Funds and/or Life's Good, Inc.  *See* Exhibit A, check receipt from First Commonwealth Service Company to Roger Paul; Exhibit B, Promissory Note between High Idea Corp. and Life's Good Lending and Development, LLC, signed by Dustin Diamond acknowledging loan from Life's Good Funds and/or Life's Good, Inc. in the amount of $43,960.00.  This loan, and the accrued interest, remains outstanding in full.

11.     The value of the benefits / payments extended by the Life's Good Funds and/or Life's Good, Inc. is approximately $136,057.016.   Neither the Life's Good Funds nor Life's Good, Inc. received any benefit from the payments extended to the Defendants.

12.     In order to secure receivership property for the benefit of investors and to otherwise carry out his duties as delineated by the Court, the Receiver files this ancillary Complaint against Defendants Rogue, RPI, Paul, High Idea Corp. and Diamond (collectively, the "Defendants"), who unjustly, inequitably and/or fraudulently received cash and in-kind benefits from Stinson and the Source Entities in excess of $136,057.16 from November 2009 until July 2010, when the S.E.C. put an end to Stinson's Ponzi scheme.

## PARTIES

13.     Plaintiff Kamian Schwartzman is vested by the Order Establishing Receivership Estate as a representative of this Court with the full powers of an equity receiver. *See* Document Nos. 29-30 in *Stinson*.

14.     Defendant Paul is an adult individual residing at 876 Kennedy Blvd, Apt. 2A, Bayonne, NJ 07002.

15.     Defendant Rogue is a Delaware corporation whose principle place of business is 1650 Broadway, Suite 1105, New York, NY 10019. The registered agent for Rogue is The Company Corporation, which has an address of 2711 Centerville Road, Suite 400, Wilmington, DE.   Starting in approximately May of 2010, Rogue leased office space from Paramount Contractors and Developers located at 6464 Sunset Boulevard, Suite 710, Los Angeles, California, 90028.  Rogue operates as a talent and entertainment agency primarily representing actors and comedians. Rogue is the *alter ego* of Defendant Paul.

4

16.     Defendant RPI is a New York corporation whose principle place of business is 1650 Broadway, Suite 304A, New York, NY 10019. RPI is a continuation of and successor entity to Rogue.  It serves the same business purpose as Rogue and maintains the same clientele. RPI is the *alter ego* of Defendant Paul.

17.     High Idea Corp. is a Wisconsin Corporation whose principal place of business is 124 Grandview Drive, Port Washington, WI  53074.  Defendant Diamond is the registered agent of High Idea Corp.

18.     Defendant Diamond is an adult individual residing at 124 Grandview Drive, Port Washington, WI  53074.   Diamond is an "Exclusive Client" of Rogue and RPI and gained notoriety for his role as Samuel "Screech" Powers in the television series *Saved By The Bell*.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction over this action pursuant to Section 22 of the Securities Act of 1933 (the "Securities Act"), codified at 15 U.S.C. § 77v, and Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act"), codified at 15 U.S.C. § 78aa, which gives the Federal courts jurisdiction over all suits in equity and actions at law brought to enforce any liability or duty created by the securities laws.

20.     This Court has ancillary jurisdiction over this action pursuant to 28 U.S.C. § 1367, given that the Receiver brings this action to accomplish the objectives of the Order Establishing Receivership Estate entered in *S.E.C. v. Robert Stinson, Jr., et al.*, No. 10-03130, and as such this action forms part of the same case or controversy.

21.     This Court is further vested with jurisdiction by the Order Establishing Receivership Estate, which vests exclusive jurisdiction of all Receivership Property in this Court,

and which requires that all actions related to Receivership Property or Records to be filed in this Court. *See* Document No. 29.

22.     Finally, this Court has jurisdiction pursuant to 28 U.S.C. §§ 754 and 1692.  The Receiver has filed certified copies of the Order Establishing Receivership Estate and Order Appointing Receiver with the United States District Court in each Federal district.  Accordingly, the Receiver is vested with complete jurisdiction and control of any real and/or personal property of the Receivership Estate located in any Federal district, and has the right to take possession of such property.

23.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 754, 1391(b) and 1692.

### THE FRAUDULENT TRANSFERS
### MADE TO ROGUE, PAUL, HIGH IDEA CORP. AND DIAMOND

24.     Defendant Rogue purports to be a talent agency that promotes clients in the entertainment industry.

25.     In approximately November 2009, Defendant Paul and Stinson entered into an agreement whereby Life's Good Funds and/or Life's Good, Inc. would fund Paul's and Rogue's operations. *See* Exhibit C, Letter of Intent Regarding Agreement.

26.     As a result, between approximately November 2009 and July 2010, Rogue and Paul received benefits of a value exceeding $136,057.16 in the form of payments used to pay: (1) Rogue employee salaries; (2) Rogue office lease payments; (3) Rogue legal representation (4) Rogue accounting services; (5) loans to Rogue's clients, (6) etc. Life's Good Funds and/or Life's Good, Inc. paid $20,008.53 of the total $136,057.16 directly to Defendant Paul.  Additional monies were paid to Rogue either for its benefit, or for loans paid to Rogue's clients, including Diamond. Neither the Life's Good Funds nor Life's Good, Inc. received any benefit from the payments they provided to Defendants.

27.     The $136,057.16 in payments by Life's Good Funds and/or Life's Good, Inc. to Rogue and Paul constitute fraudulent transfers under the Pennsylvania Fraudulent Transfer Act, and Defendants Rogue and Paul are liable to the Source Entities for that amount.

28.     In addition, Defendant Diamond received approximately $40,000.00 of the total $136,057.16 from Paul and Rogue, the payment of which originated from Life's Good Funds and Life's Good, Inc.

29.     High Idea Corp. c/o Defendant Diamond entered into a Promissory Note agreement with Life's Good Development, LLC acknowledging the loan amount of $40,000.00 originated from Life's Good Funds and Life's Good, Inc.  The Promissory Note was signed by Defendant Diamond.  Upon information and belief, none of High Idea Corp., Diamond, Paul, or Rogue have directly or indirectly repaid the loan with interest, or provided any value in exchange thereof.

30.     Therefore, the loan of $40,000.00 constitutes a fraudulent transfer pursuant to the Pennsylvania Uniform Fraudulent Transfer Act, and Defendants High Idea Corp. and Diamond are liable as subsequent transferees.

31.     RPI is liable for the foregoing payments as a successor entity to and *alter ego* of Paul.

## COUNT I
### Action to Avoid Fraudulent Transfer Pursuant to 12 Pa. C.S.A. § 5104(a)
#### (Against Rogue and Paul)

32.     The Receiver incorporates Paragraphs 1-31 as if set forth fully at length herein.

33.     As set forth above, the Source Entities conferred benefits, made payments and/or transfers of funds at the request and for the benefit of Defendants Rogue and Paul totaling at least $136,057.016.

7

34.     All transfers of the assets of the Life's Good Funds and Life's Good, Inc. to, for the benefit of, or at the request of Defendants Rogue and Paul were fraudulent transfers within the meaning of the Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa. C.S.A. § 5101 *et seq.*

35.     Because Stinson operated the Life's Good Funds and Life's Good, Inc. as a Ponzi scheme, all transfers of assets from the Life's Good Funds or Life's Good, Inc. to, for the benefit of, or at the request of Defendants Rogue and Paul were made with the actual intent to hinder, delay and/or defraud any of the Source Entities' creditors and/or debtors, and are fraudulent. *See* 12 Pa. C.S.A. § 5104(a)(1).

36.     When the transfers were made to Defendants Rogue and Paul, Stinson was operating the Life's Good Funds and Life's Good, Inc. as part of a Ponzi scheme intending to incur, or believing or reasonably believing that the Source Entities would incur, debts beyond their ability to pay them as they became due.  12 Pa. C.S.A. § 5104(a)(1).

37.     When the transfers were made to Defendants Rogue and Paul, the Source Entities had actual assets that were unreasonably small in relation to the assets invested with the Source Entities by their investors.  12 Pa. C.S.A. § 5104(a)(2)(ii).

38.     The transfers to Defendants Rogue and Paul were unreasonable in that Stinson, the Life's Good Funds and Life's Good, Inc. failed to receive reasonably equivalent value in exchange for the funds provided to Rogue and Paul.

39.     The Receiver is entitled to avoid the fraudulent transfers of assets from the Life's Good Funds and Life's Good, Inc. to, for the benefit of, or at the request of Defendants Rogue and Paul to inure to the benefit of the Receivership Estate in order to maximize the recovery for that Estate.

8

WHEREFORE, Plaintiff Kamian Schwartzman, in his capacity as Receiver for the Receivership Estate established by Order entered September 13, 2010 in *S.E.C. v. Robert Stinson, Jr., et al.*, Civil Action No. 10-03130 (BMS), respectfully requests this Court enter a judgment in his favor and against Defendants Rogue and Paul avoiding and setting aside the transfers of at least $136,057.16 made by the Life's Good Funds to the Defendants Rogue and Paul. To the extent the funds have been used to acquire real or personal property in which Defendants claim an interest, the Receiver also seeks a constructive trust and/or equitable lien over those assets or alternatively, recovery of the asset(s) purchased with Receivership Property. The Receiver also requests interest, costs, and such other and further relief as this Court shall deem just and proper.

## COUNT II
### Unjust Enrichment
### (Against Rogue and Paul)

40.     The Receiver incorporates Paragraphs 1-39 as if set forth fully at length herein.

41.     The Life's Good Funds conferred a benefit on Defendants Rogue and Paul by providing the transfers described herein.

42.     The Life's Good Funds conferred additional benefits on Defendants Rogue and Paul by providing, *inter alia*, office space free of rent, paying the salaries of Rogue employees, paying for loans to Rogue clients, and providing transfers directly to Paul, despite the lack of any benefit to the Life's Good Funds and/or Life's Good Inc.

43.     Defendants Rogue and Paul knowingly and voluntarily accepted and retained the benefits conferred upon them by the Life's Good Funds and/or Life's Good, Inc.

44.     Under the factual circumstances as alleged herein, it would be inequitable for Defendants Rogue and Paul to retain the benefits conferred upon them, as the funds transferred

9

to the Defendants and the other benefits conferred upon them were the product of a Ponzi scheme and were comprised of monies paid into the Ponzi scheme by innocent investors, who were unaware of the scheme being orchestrated by Stinson.

WHEREFORE, Plaintiff Kamian Schwartzman, in his capacity as Receiver for the Receivership Estate established by Order entered September 13, 2010 in *S.E.C. v. Robert Stinson, Jr., et al.*, Civil Action No. 10-03130 (BMS), respectfully requests this Court enter a judgment in his favor and against Defendants Rogue and Paul in an amount of at least $136,057.16, and to be determined more fully after discovery regarding the value of the benefits conferred upon Rogue and Paul. To the extent the funds have been used to acquire real or personal property in which Defendants claim an interest, the Receiver also seeks a constructive trust and/or equitable lien over those assets or alternatively, recovery of the asset(s) purchased with Receivership Property. The Receiver also requests interest, costs, and such other and further relief as this Court shall deem just and proper.

## COUNT III
### Piercing the Corporate Veil
### (Against Paul and RPI)

45.     The Receiver incorporates Paragraphs 1-44 as if set forth fully at length herein.

46.     Rogue and RPI are the *alter egos* of Paul, as evidenced by, *inter alia*, the facts that: (1) Paul controls both of them; (2) upon information and belief, both entities were undercapitalized relative to the business within which they sought to engage in; (3) the entities were used to perpetuate the fraud as alleged herein; and (4) Paul treated the assets of Rogue and RPI as though they were assets of his own.

47.     At all times relevant hereto, Paul was the President of both Rogue and RPI, and exercised complete control over both companies.

48.     Upon information and belief, Paul commingled the assets of the Rogue and RPI.

49.     Upon information and belief, Paul solely directed all policy decisions for and by Rogue and RPI.

50.     Upon information and belief, Paul solely controlled Rogue's and RPI's bank accounts.

51.     Upon information and belief, Paul used Rogue and RPI to perpetuate the fraudulent transfer alleged herein.

52.     RPI is a successor entity to and continuation of Rogue.  RPI has the same business model as Rogue, maintains the same clientele, and operates out of the same building.

WHEREFORE, Plaintiff Kamian Schwartzman, in his capacity as Receiver for the Receivership Estate established by an Order entered on September 13, 2010 in *Stinson*, respectfully requests that this Court pierce of the veil of RPI holding it liable for the fraudulent transfer received by its predecessor entity Rogue, and pierce the corporate veils of Rogue and RPI, and impose individual liability on Paul, the President and *alter ego* of Rogue and RPI.

**COUNT IV**
**Action to Avoid Fraudulent Transfer Pursuant to 12 Pa. C.S.A. §§ 5104(a) and 5108(b)**
**(Against High Idea Corp. and Dustin Diamond)**

53.     The Receiver incorporates Paragraphs 1-52 as if set forth fully at length herein.

54.     Defendants High Idea Corp. and Diamond received a loan payment in the amount of at least $40,000.00 from the Life's Good Funds and/or Life's Good, Inc.  *See* Exhibits A and B.

55.     The transfer of the assets of the Life's Good Funds or Life's Good, Inc. to, for the benefit of, or at the request of Defendants High Idea Corp. and Diamond was a fraudulent

11

transfer within the meaning of the Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa. C.S.A. § 5101 *et seq.*

56.     Because Stinson operated the Life's Good Funds and Life's Good, Inc. as a Ponzi scheme, and because all assets of the Life's Good Funds and Life's Good, Inc. were derived from said Ponzi scheme, all transfers of assets from the Funds or Life's Good, Inc. to, for the benefit of, or at the request of Defendants High Idea Corp. and Diamond were made with the actual intent to hinder, delay and/or defraud any of the Source Entities' creditors and/or debtors, and are fraudulent. *See* 12 Pa. C.S.A. § 5104(a)(1).

57.     When the transfer was made, Stinson was operating the Life's Good Funds and Life's Good, Inc. as a Ponzi scheme intending to incur, or believing or reasonably believing that the Funds would incur, debts beyond their ability to pay them as they became due.  12 Pa. C.S.A. § 5104(a)(1).

58.     When the transfer was made, the Life's Good Funds and Life's Good, Inc. had actual assets that were unreasonably small in relation to the assets invested with the Life's Good Funds by their investors.  12 Pa. C.S.A. § 5104(a)(2)(ii).

59.     The transfer to Rogue that went subsequently to Defendants High Idea Corp. and/or Diamond was made without receiving reasonably equivalent value in exchange, in that the Defendant performed no services for Life's Good Funds or Life's Good, Inc., and no benefit ever accrued to the Life's Good Funds or Life's Good, Inc. as a result of their payments to Rogue, which subsequently went to Diamond.

WHEREFORE, Plaintiff Kamian Schwartzman, in his capacity as Receiver for the Receivership Estate established by Order entered September 13, 2010 in *S.E.C. v. Robert Stinson, Jr., et al.*, Civil Action No. 10-03130 (BMS), respectfully requests this Court enter a

judgment in his favor and against Defendants High Idea Corp. and Diamond, avoiding and setting aside the transfers made by the Life's Good Funds and/or Life's Good, Inc. to Rogue, which was subsequently paid to High Idea Corp. and/or Diamond. To the extent the funds have been used to acquire real or personal property in which Defendants claim an interest, the Receiver also seeks a constructive trust and/or equitable lien over those assets or alternatively, recovery of the asset(s) purchased with Receivership Property. The Receiver also requests the accrued interest on the loan, costs, and such other and further relief as this Court shall deem just and proper.

## COUNT V
### Unjust Enrichment
### (Against High Idea Corp. and Diamond)

60.     The Receiver incorporates Paragraphs 1-59 as if set forth fully at length herein.

61.     The Life's Good Funds and/or Life's Good, Inc. conferred a benefit on Defendants High Idea Corp. and Diamond by providing the transfer described herein.

62.     Defendants High Idea Corp. and Diamond knowingly and voluntarily accepted and retained the benefits conferred upon him by the Life's Good Funds or Life's Good, Inc.

63.     Under the factual circumstances as alleged herein, it would be inequitable for Defendants High Idea Corp. and Diamond to retain the benefits conferred upon them, as the monies transferred were the product of a Ponzi scheme and were comprised of funds paid into the Ponzi scheme by innocent investors, who were unaware of the scheme being orchestrated by Stinson.

WHEREFORE, Plaintiff Kamian Schwartzman, in his capacity as Receiver for the Receivership Estate established by Order entered September 13, 2010 in *S.E.C. v. Robert Stinson, Jr., et al.*, Civil Action No. 10-03130 (BMS), respectfully requests this Court enter a

13

judgment in his favor and against Defendants High Idea Corp. and/or Diamond in the amount that they were unjustly enriched. To the extent the funds have been used to acquire real or personal property in which Defendants claim an interest, the Receiver also seeks a constructive trust and/or equitable lien over those assets or alternatively, recovery of the asset(s) purchased with Receivership Property. The Receiver also requests the accrued interest on the loan, costs, and such other and further relief as this Court shall deem just and proper.

### COUNT VI
### Equitable Accounting
### (Against All Defendants)

64.     The Receiver incorporates Paragraphs 1-63 as if set forth fully at length herein.

65.     Defendants have gained possession, custody and/or control of Receivership Property as a result of the fraudulent transfers and unjust enrichment alleged above.

66.     The benefits accruing to Defendants consist of direct transfers of funds, in-kind asset transfers, indirect transfers, payment of expenses, payments of overhead, inappropriate and baseless "loans," and other, similar actions as alleged herein.

67.     The accounts involved are mutual and/or complicated, as alleged herein.

68.     The Receiver is obligated to recover all Receivership Property for the benefit of the Receivership Estate, and has no adequate remedy at law to ensure the return of all such property fraudulently or unjustly transferred into the possession, custody or control of Defendants absent the grant of an equitable accounting.

69.     To the extent the Receiver prevails on his claim for unjust enrichment, he is entitled to an equitable accounting as a matter of law.

WHEREFORE, Plaintiff Kamian Schwartzman, in his capacity as Receiver for the Receivership Estate established by Order entered September 13, 2010 in *S.E.C. v. Robert*

14

*Stinson, Jr., et al.*, Civil Action No. 10-03130 (BMS), respectfully requests this Court enter a judgment in his favor and against Defendants and orders all Defendants to provide Plaintiff with an accounting of any and all property they have received, directly or indirectly, from the Life's Good Funds or other Source Entities, and any and all other relief this Court deems just and proper.

Respectfully submitted,

**PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP**

By: _____
GAETAN J. ALFANO, ESQUIRE
FRANCESCO P. TRAPANI., ESQUIRE
I.D. Nos. 32971 and 209123
1818 Market Street, Suite 3402
Philadelphia, PA 19103
(215) 320-6200

*Attorneys for Kamian Schwartzman, Receiver*

Dated: September 12, 2012

15

# EXHIBIT A

FIRST COMMONWEALTH SERVICE COMPANY          1266

DATE 3/18/2010

PAY TO THE ORDER OF   Roger Paul                    $ 40,000

Forty Thousand Dollars                         DOLLARS

TD Bank

FOR Dustin Diamond

Account:        5269
Amount: 40,000.00
PostDate: 20100323
Tran_ID: 502387357
CheckNum: 1266
DIN:

Account:        5269
Amount: 40,000.00
PostDate: 20100323
Tran_ID: 502387357
CheckNum: 1266
DIN:

REDACTED

# EXHIBIT B

# PROMISSORY NOTE

This Mortgage Note is made as of the 8th day of March, **2010**

**BETWEEN** the Borrower, High Idea Corp, LLC (EIN) 201649196
whose address is:         124 Grandview Drive
                Port Washington, WI 53074
                c/o Dustin Diamond  referred to as "Borrower" or "We",

**AND** the Lender         **Life's Good Lending and Development, LLC ( 10005 )**
whose address is:         **1800 JFK Boulevard, Suite 300**
                **Philadelphia, PA 19103**, referred to as "Lender."

The word "Lender" means the original Lender and anyone else who takes this Note by transfer.

   **Borrower's Promise to Pay Principal and Interest,** for value received, to be legally bound, Borrower promises to pay Forty-three thousand , nine hundred sixty dollars and  no cents ($42,360.00), called "principal and interest", to the order of Lender.  The principal and interest which must be  repaid from the date of this Note until all principal and interest  has been repaid, upon the terms and conditions herein the payment interest at 9%.

   **Payments.** Borrower will make monthly payments of $1221.11 until all the loan completely paid off starting April 1, 2010 to the above address on a  360-day basis, due on the each  month.  Borrower will pay the balance of all principal and interest that is due under this Note until the note is paid  in full.

   **Default Rate.** Notwithstanding the foregoing, interest will accrue and be payable on the outstanding principal amount hereof and all other sums payable under the Loan Documents, following the occurrence of an Event of Default or the final maturity date of this Note, until paid, at a rate per annum which is five percent (5%) in excess of the applicable rate of interest payable under the above paragraph (the "Default Rate"). Any judgment obtained for sums due hereunder or under the Loan Documents will accrue interest at the Default Rate until paid.

   **Late Charge For Overdue Payments.** If the Lender has not received any payment within ten (10) days after its due date, Borrower will pay to Lender **a late charge of five (5%) percent** for each dollar so overdue, and $25.00 for returned NSF checks, to compensate Lender for its administrative expenses in connection with the collection of payments due.

   <u>**Prepayment.**</u> The Borrower is given the privilege of prepaying the loan in full without penalty.

   **Secured Payment.** This Note is secured by, and Lender has been given permission by the signature of the Lender is to file a personal judgment against the borrowers. We agree to keep all promises made in the Note covering the physical payment to **1800 JFK Boulevard, Suite 300, Philadelphia, PA 19103**

   **Events of Default.** For purposes hereof, each of the following shall constitute an Event of Default ("Event of Default") hereunder and under each of the Loan Documents:

**(a)**        The failure of Borrower(s) to pay any amount of principal on this Note, any fee or other sums payable hereunder (" Lender Indebtedness") on the date on which such payment is due, whether on demand, at the stated maturity or due date thereof, or by reason of any requirement for the prepayment thereof, by acceleration or otherwise;
**(b)**        The failure of Borrower(s) or any Guarantor(s) to duly perform or observe any obligation, covenant or agreement on its or their part contained herein.
**(c)**        The adjudication of Borrower or any Guarantor as a bankrupt or insolvent, or the entry of an Order for Relief against Borrower or any Guarantor or the entry of an order appointing a receiver or trustee for Borrower or any Guarantor of any of their account or approving a petition seeking reorganization or other similar relief under the bankruptcy or other similar laws of the United States or any state or any other competent jurisdiction;
**(d)**        A proceeding under any bankruptcy, reorganization, arrangement of debt, insolvency, readjustment of debt or

1

ST-DS 00058

receivership law is filed by or (unless dismissed within 60 days) against Borrower or any Guarantor or Borrower or any Guarantor makes an assignment for the benefit of creditors or Borrower or any Guarantor takes any action to authorize any of the foregoing;

(e)     All or any part of the Collateral or the assets of Borrower/s or any Guarantor/s are attached, seized, subjected to a writ or distress warrant, or levied upon, or come within the possession or control of any receiver, trustee, custodian or assignee for the benefit of creditors including but not limited to liens imposed by taxing authorities, and other liens on the Collateral which may become a priority to Lender's rights.

(f)     The entry of a final judgment for the payment of money against Borrower or any Guarantor which, within ten (10) days after such entry, shall not have been discharged or execution thereof stayed pending appeal or shall not have been discharged within five (5) days after the expiration of any such stay;

(g)     Any representation or warranty of Borrower or any Guarantor in any of the Loan Documents is discovered to be untrue in any material respect or any statement, certificate or data furnished by Borrower or any Guarantor pursuant hereto is discovered to be untrue in any material respect as of the date as of which the facts therein set forth are stated or certified;

(h)     Borrower or any Guarantor dies, or voluntarily or involuntarily dissolves or is dissolved, terminates or is terminated;

(i)     A material and adverse change occurs in any of Borrower's or any Guarantor's operations, management or financial condition or in the value of the Collateral;

(j)     The Collateral or the prospects of the payment of the Lender Indebtedness is jeopardized or impaired or Lender otherwise deems itself insecure with respect to Borrower's or any Guarantor's ability to pay the Lender Indebtedness or otherwise perform hereunder;

(k)     Any material loss, theft, or destruction of, any of the Collateral occurs;

(l)     The validity or enforceability of this Note or any of the Loan Documents is contested by the Borrower or any Guarantor or any stockholder of Borrower; or Borrower or Guarantor denies that it has any or any further liability or obligation hereunder or there under; and

(m)     The occurrence of an Event of Default under any of the other Loan Documents.

(n)     The borrower selected to use an outside firm to pay and be responsible for this note payments, this does not excuse the borrower from repayment of this note.

**Remedies.**  Upon the occurrence of an Event of Default, Lender, at its option and without notice to Borrower, may declare immediately due and payable the entire Lender Indebtedness, together with interest thereon at the applicable rate specified herein to the date of the Event of Default and thereafter at the Default Rate.  Payment may be enforced and recovered in whole or in part at any time by one or more of the remedies in this Note or in the Loan Documents, or as may be available to Lender at law or in equity.  If Lender employs counsel to enforce this Note by suit or otherwise, Borrower will reimburse Lender for all costs of suit and other expenses in connection therewith, whether or not suit is actually instituted, together with Lender's reasonable attorney's fees incurred in collecting all amounts due, which reasonable attorneys' fees are agreed to be 15% of all such amounts due, including but not limited to principal, interest, late fees and other charges, and lender's costs and expenses for protecting the collateral (such as real estate taxes and insurance premiums advanced), but such reasonable attorneys' fees shall not be less than Five Thousand Dollars ($5,000.00), together, to the extent permitted by applicable law, with interest on any judgment obtained by Lender at the Default Rate, including interest at the Default Rate from and after the date of execution, seizure of the aforementioned accounts until actual payment is made to Lender of the full amount due to Lender.

**Remedies Cumulative.**  The rights, remedies, powers and privileges provided for herein or in the Loan Documents shall not be deemed exclusive, but shall be cumulative and shall be in addition to all other rights, remedies, powers and privileges in Lender's favor at law or in equity.

**Fees, Costs and Expenses.**  Borrower shall pay upon demand all costs and expenses incurred by Lender in connection with the Loan Documents and the Lender Indebtedness, including, without limitation, attorney's fees and expenses, and the cost of appraisals and reappraisals of the Collateral, and the cost of periodic lien searches, as Lender deems advisable; all losses, costs and expenses in connection with the exercise, enforcement, protection and preservation of Lender's rights or remedies under the Loan Documents. In the event Borrower fails to pay costs or expenses which it is required to pay hereunder or under any of the Loan Documents, or fails to keep the Collateral free from security interests or liens as required under the Loan Documents, Lender in its discretion, may make expenditures for such purposes and the amount so expended shall be payable by Borrower on demand and constitute part of the Lender Indebtedness. And in the event Borrower fails to pay such amount on demand, Borrower shall also pay to Lender interest thereon at the Default Rate.  Borrower's obligations hereunder shall survive repayment of the principal amount of this Note

ST-DS 00059

**Limitation of Interest to Maximum Lawful Rate.** In no event shall the rate of interest payable hereunder exceed the maximum rate of interest permitted to be charged by applicable law (including the choice of law rules) and any interest paid in excess of the permitted rate shall be refunded to Borrowers. Such refund shall be made by application of the excessive amount of interest paid against any sums outstanding and shall be applied in such order as Lender may determine. Any such crediting or refund shall not cure or waive any default by Borrower. Borrower agrees, however, that in determining whether or not any interest payable under this Note exceeds the highest permitted rate, any non-principal payment, including late charges, interest escrows, loan fees and expenses are and shall be deemed to the extent permitted by law to be late charges, interest escrows, loan fees or expenses, as applicable, and not interest.

**Assignment or Sale by Lender.** Lender may sell, assign or participate all or a portion of its interest in this Note and/or any of the Loan Documents and in connection therewith may make available to any prospective purchaser, assignee or participant any information relative to Borrower and/or Guarantor in its possession.

**Waivers.** In connection with any proceedings under the Loan Documents or Lender Indebtedness, including any action by Lender in replevin, foreclosure or other court process related to the Loan Documents Borrower hereby waives (a) all errors, defects and imperfections in such proceedings; (b) all benefits under any present or future laws exempting any property, real or personal, or any part of any proceeds thereof from attachment, levy or sale under execution, or providing for any stay of execution to be issued on any judgment recovered under any of the Loan Documents or in any replevin or foreclosure proceeding, or otherwise providing for any valuation, appraisal or exemption; (c) all rights to inquisition on any real estate which may be levied upon pursuant to a judgment obtained under any of the Loan Documents and sold upon any writ of execution issued thereon, in any order desired by Lender; (d) the right to require that Lender: demand payment (called "presentment"); notify borrower of non-payment (called "notice of dishonor"); and obtain an official certified statement showing non-payment (called a "protest"). Lender may exercise any right under this Note, the Mortgage or under any law, even if Lender has delayed in exercising or agreed in an earlier instance not to exercise that right. Lender does not waive its right to declare Borrower in default, by making payments or incurring expenses on Borrower's behalf. No course of dealing between Lender and Borrower shall operate as or be deemed to constitute a waiver of Lender's rights under the Loan Documents or affect the duties or obligations of Borrower.

**Communications and Notices.** All notices, requests and other communications made or given in connection with the Loan Documents shall be in writing and deemed to have been validly given if delivered personally to a party to be addressed, or by private carrier, or registered or certified mail, return receipt requested, charges prepaid, addressed to the party to be noticed at its address set forth above, or a new address given by notice to the other party.

**CONFESSION OF JUDGMENT. BORROWER HEREBY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR THE PROTHONOTARY OR CLERK OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA, OR IN ANY OTHER JURISDICTION WHICH PERMITS THE ENTRY OF JUDGMENT BY CONFESSION, TO APPEAR FOR BORROWER AT ANY TIME AFTER THE OCCURRENCE OF AN EVENT OF DEFAULT IN ANY ACTION BROUGHT AGAINST BORROWER ON THIS NOTE OR THE LOAN DOCUMENTS AT THE SUIT OF LENDER, WITH OR WITHOUT COMPLAINT OR DECLARATION FILED, WITHOUT STAY OF EXECUTION, AS OF ANY TERM OR TIME, AND THEREIN TO CONFESS OR ENTER JUDGMENT AGAINST BORROWER FOR THE ENTIRE UNPAID OUTSTANDING PRINCIPAL AMOUNT OF THIS NOTE AND ALL OTHER SUMS TO BE PAID BY BORROWER TO OR ON BEHALF OF LENDER PURSUANT TO THE TERMS HEREOF OR OF THE LOAN DOCUMENTS AND ALL ARREARAGES OF INTEREST THEREON, TOGETHER WITH ALL COSTS AND OTHER EXPENSES AND AN ATTORNEY'S COLLECTION COMMISSION OF FIFTEEN PERCENT (15%) OF THE AGGREGATE AMOUNT OF THE FOREGOING SUMS, BUT IN NO EVENT LESS THAN $5,000.00; AND FOR SO DOING THIS NOTE OR A COPY HEREOF VERIFIED BY AFFIDAVIT SHALL BE A SUFFICIENT WARRANT. THE AUTHORITY GRANTED HEREIN TO CONFESS JUDGMENT SHALL NOT BE EXHAUSTED BY ANY EXERCISE THEREOF BUT SHALL CONTINUE FROM TIME TO TIME AND AT ALL TIMES UNTIL PAYMENT IN FULL OF ALL THE AMOUNTS DUE HEREUNDER.**

**BORROWER ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED BY COUNSEL IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS NOTE AND THAT IT KNOWINGLY WAIVES ITS RIGHT TO BE HEARD PRIOR TO THE ENTRY OF SUCH JUDGMENT AND UNDERSTANDS THAT, UPON SUCH ENTRY, SUCH JUDGMENT SHALL BECOME A LIEN ON ALL REAL PROPERTY OF BORROWER IN THE COUNTY WHERE SUCH JUDGMENT IS ENTERED AND THAT EXECUTION MAY IMMEDIATELY BE ISSUED ON THE JUDGMENT TO GARNISH, LEVY ON OR ATTACH ANY**

3

ST-DS 00060

PERSONAL PROPERTY OF BORROWER

This Note has been delivered to Lender and accepted by Lender in the Commonwealth of Pennsylvania. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Philadelphia County, the Commonwealth of Pennsylvania. Lender and Borrower hereby waive the right to any jury trial in any action, proceeding or counterclaim brought by either Lender or Borrower against the other. This Note shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania.

No Oral Changes. This Note can only be changed by an agreement in writing signed by both Borrower and Lender.

IN WITNESS WHEREOF, Borrower, intending to be legally bound hereby, has caused this Note to be duly executed the day and year first above written.

PRIOR TO SIGNING THIS NOTE, I HAVE READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. I AGREE TO THE TERMS OF THE NOTE AND ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THE NOTE.

BORROWERS:
Dustin Diamond                          Date 03/08/2010

Witness:                                Date 03/08/2010


## ACKNOWLEDGMENT

(State of Wisconsin) New York
(COUNTY OF Port Washington) ss:

On the 8th day of March in the year 2010 before me, the undersigned, personally appeared Borrower, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

In witness whereof, I hereunto set my hand and official seal.

Notary Public in and for the State of Wisconsin
New York

MERCHY A. SANTOS
Notary Public, State of New York
No. 01SA6152622
Qualified in Queens County
Commission Expires Sept. 18, 2010

4

ST-DS 00061

# EXHIBIT C



1800 JFK BOULEVARD, SUITE 300
PHILADELPHIA, PA 19103

866-845-1995 (tel)
215-754-4994 (fax)

info@lifesgoodabundance.com
www.lifesgoodabundance.com

November 12, 2009

## LETTER OF INTENT

Roger Paul Talent
1650 Broadway, Suite 1105
New York, NY 10019

Dear Mr. Paul:

After our meeting and discussions on Tuesday November 10, 2009, it is with the understanding and acknowledgement between Roger Paul of Roger Paul Talent and Robert (Bob) Stinson, Jr. of Life's Good, Inc. that we have agreed to the following:

1. Formerly, Roger Paul Talent, recently formed as Rogue International, LLC, will become a subsidiary and affiliate of Life's Good, Inc. and will be formed in Nevada and registered in New York and California

2. There will be a 50/50 Partnership between Roger Paul Talent/aka Rogue International, LLC and Life's Good, Inc.
   a. All profit originating from the revenue of Roger Paul Talent/aka Rouge International, LLC will be split 50/50 with Life's Good, Inc. after the deduction of all expenses paid by Life's Good, Inc.
   b. Effective immediately, Roger Paul of Roger Paul Talent will be a Life's Good, Inc. employee with the Title of President of Rouge International, LLC, and his income will be based strictly on commission and not salary, and will immediately be provided with health care insurance benefits.

3. Life's Good, Inc. will pay all past due and current bills, payroll, and reasonable expenses that derive directly from the operation of Roger Paul Talent/aka Rogue International, LLC. In New York and California
   a. Roger Paul Talent/aka Rouge International, LLC will hire a secretary for the New York and California locations and he/she will be added to Life's Good, Inc.'s payroll; not to include health care coverage until after his/her 90 day probationary period as outlined in Life's Good, Inc. policies.
   b. All reasonable expenses incurred by Roger Paul and Roger Paul Talent/aka Rouge International, LLC will be reimbursed by Life's Good, Inc. and must be expensed and submitted directly to the accounting department of Life's Good, Inc. @ 600 N. 3rd Street, Philadelphia, PA 19123, Attention: Derrick Frazer.

*must be approval process*

**Wholly Owned Subsidiaries & Affiliates**

Keystone State Capital Corporation * Stinson Assurance Associates, Inc. * Intergen International, Inc.
World Financial Enterprise, LLC * First Commonwealth Service Company * Life's Good Lending & Development, LLC
Eclipse Channel Online Network, Inc. * LGA Productions, Inc. * Nth Productions, Inc. * Upper Room Recording Studios, Inc.

**Member:** Better Business Bureau * Philadelphia Chamber Of Commerce * Dun & Bradstreet (DUNS# 79-1568582)

**Listed On:** Morningstar Fund Exchange * Barclay Hedge Fund Directory * Lipper Hedge Fund Directory * Credit Suisse Hedge Fund Exchange

Bonded and Insured

STIN011793

Page 2                                                          November 12, 2009

4.  Life's Good, Inc. will make available to Rouge International, LLC and its roster of talent the following services:

    a.  Legal representation
    b.  Accounting Services
    c.  Marketing and Public Relations
    d.  Investment Advisory Services
    e.  Insurance
    f.  Internet Television Exposure
    g.  Recording Studio and Sound Stage

We will set forth all of the legal documents and contracts between both businesses at a later date that will be determined in order to finalize this agreement.

Sincerely,

Robert Stinson, Jr.
Chief Executive Officer

STIN011794