IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAMIAN SCHWARTZMAN, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ROGUE INTERNATIONAL TALENT | : | |
| GROUP, INC., et al., | : | No. 12-5255 |
| Defendants. | : | |

## MEMORANDUM

**Schiller, J.**                                                                                                                                          February 6, 2013

      In establishing a receivership estate to recover funds stolen in a Ponzi scheme, this Court stayed all litigation against certain entities and required Court permission prior to filing a lawsuit against those entities. In spite of this stay, Roger Paul has asserted counterclaims against Robert Stinson, Jr. and the Receiver, Kamian Schwartzman. On January 4, 2013, the Receiver sought to dismiss Paul's counterclaims. For the following reasons, the Court grants the motion.

**I.    BACKGROUND**

      By Order dated September 13, 2010, this Court established a receivership estate to recover funds stolen in a Ponzi scheme perpetrated by Stinson. (Order Establishing Receivership Estate, *SEC v. Stinson*, Civ. A. No. 10-3130, Document No. 29.) The Order stays all litigation related to the receivership property and states that "[a]ny person or entity wishing to continue to pursue or initiate a civil action or other proceeding against the Source Entities, Receivership Property, Receivership Records, or the Receiver may do so only after obtaining express permission from this Court to do so." (*Id.* ¶ 31.) According to the Receiver's most recent quarterly report, several ancillary actions brought by the Receiver to recover receivership assets are pending, and the Receiver continues to

investigate potential claims against additional third parties. (Eighth Quarterly Status Report of Kamian Schwartzman, Court Appointed Receiver, *SEC v. Stinson*, Civ. A. No. 10-3130, Document No. 265.) The Receiver has not yet determined whether he will recover funds sufficient to warrant a distribution to defrauded investors. (*Id.*) On September 12, 2012, the Receiver sued Rogue International Talent Group, Inc. ("Rogue"), Roger Paul, and others, seeking to recover funds allegedly transferred between Stinson entities and Defendants in excess of $136,057.16. (*See* Compl. ¶ 12.) Paul filed his Answer on December 14, 2012, which included counterclaims against Stinson and the Receiver. (Answer ¶¶ 10-13.) Although Paul never sought leave to file his counterclaims or to lift the litigation stay, because he is proceeding pro se the Court construes his counterclaims as a request for the Court to lift the litigation stay. On January 4, 2013, the Receiver filed a motion to dismiss Paul's counterclaims, arguing that they failed to state a claim and that the litigation stay should not be lifted.

**II.   DISCUSSION**

The purpose of a litigation stay entered pursuant to a receivership order is to give the receiver "a chance to do the important job of marshaling and untangling a company's assets without being forced into court by every investor or claimant." *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 443 (3d Cir. 2005). "Nevertheless, an appropriate escape valve, which allows potential litigants to petition the court for permission to sue, is necessary so that litigants are not denied a day in court during a lengthy stay." *Id.* To determine whether to lift a stay of litigation under these circumstances, a district court should consider: "(1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the

time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim." *Id.* (quoting *SEC v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984)). The movant bears the burden of proving that these factors weigh in favor of lifting the stay. *SEC v. Illarramendi*, Civ. A. No. 11-78, 2012 WL 234016, at *4 (D. Conn. Jan. 25, 2012).

### A. Balancing the Interests of the Receiver and Paul

The first question is "whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed." *Acorn Tech.*, 429 F.3d at 443. This requires the Court to balance the Receiver's interest in maintaining the status quo with any injury the moving party may suffer if the stay remains in place. *See Illarramendi*, 2012 WL 234016, at *5.

Paul argues that he "was and is a victim of the [Stinson] Ponzi scheme" and that "[j]ustice requires that Defendant be allowed to proceed with efforts to both defend himself and seek to prosecute claims against those who have harmed him." (Def. Roger Paul's Br. in Opp'n to Receiver's Mot. to Dismiss [Paul's Opp'n] at 11.) The mere fact that resolution of Paul's claims will be postponed until after the Receiver has finished untangling the estate's assets is not a substantial injury. *See Acorn Tech.*, 429 F.3d at 449 ("Not being allowed the first bite at the apple is not the kind of substantial injury we will recognize under the first prong . . . ."). Similarly, Paul's claim that he is a victim, rather than a participant, in the Stinson Ponzi scheme fails to justify lifting the litigation stay. When the receivership terminates, Paul may bring his claims alongside other alleged victims of the Ponzi scheme. Likewise, though Paul argues that the Court's failure to lift the litigation stay will hinder his defense in this case, he does not explain why the litigation stay affects his defense against the Receiver's claims that he was a knowing participant in the Ponzi scheme.

The Court also finds that lifting the stay would upset the status quo. The receivership has an interest in maintaining the status quo, "which attempts to preserve the assets of the defrauded investors." *SEC v. Vescor Capital Corp.*, 599 F.3d 1189, 1197 (10th Cir. 2010). Otherwise, certain parties may be granted unfair "priority over other investors who were victimized by the same fraudulent scheme." *SEC v. Kaleta*, Civ. A. No. 09-3674, 2012 WL 2577537, at *3 (S.D. Tex. July 3, 2012). In balancing Paul's interests in lifting the litigation stay against the interests of the Receiver in maintaining the status quo, the Court defers to the Receiver's judgment about the most efficient use of receivership assets at this stage. *See Acorn Tech.*, 429 F.3d at 443 ("A district court should give appropriately substantial weight to the receiver's need to proceed unhindered by litigation . . . ."); *SEC v. Byers*, 592 F. Supp. 2d 532, 537 (S.D.N.Y. 2008) ("The Receiver is charged with protecting the investors as a whole, and thus the best way to maintain the status quo is to permit him to carry on with his investigation."), *aff'd*, 609 F.3d 87 (2d Cir. 2010). The Court also finds that lifting the litigation stay for Paul's claims would inevitably lead to similar requests from other defrauded investors, thus subjecting the receivership estate to substantial litigation expenses and depleting receivership assets. *See Acorn Tech*. 429 F.3d at 443 (instructing district courts to consider "the very real danger of litigation expenses diminishing the receivership estate"), *FTC v. Med Resorts Int'l, Inc.*, 199 F.R.D. 601, 609 (N.D. Ill. 2001) (recognizing that lifting a stay for certain claimants would open the door to others and "the assets of the receivership estate would quickly be diminished"). Because Paul has failed to articulate any injury he will suffer if the stay remains, and lifting the stay would upset the status quo, the Court finds that this factor favors preserving the stay.

    **B.**    **The Timing of Paul's Counterclaims in the Course of the Receivership**

The second consideration is "the time in the course of the receivership at which the motion

for relief from the stay is made." *Acorn Tech.*, 429 F.3d at 443. There is no "clear cut-off date after which a stay should be presumptively lifted," and the inquiry is "inherently case-specific." *Id.* at 450. The receivership has been in place since September 13, 2010—a relatively short period of time for a receivership. *See, e.g., id.* at 449-50 (refusing to lift stay in effect for thirty to thirty-six months); *SEC v. Universal Fin.*, 760 F.2d 1034 (9th Cir. 1985) (refusing to lift stay in effect for almost four years). The Receiver continues to gather facts and has not yet determined whether a distribution to defrauded investors will be possible. *See Wencke*, 742 F.2d at 1232 (lifting stay after seven years, emphasizing that no new facts had been discovered in six years and that the receiver was ready to distribute assets). As the receivership is at an early stage and the Receiver is still collecting relevant information, this factor weighs in favor of maintaining the stay.

      C.      **The Merits of Paul's Underlying Claims**

The final factor is "the merit of the moving party's underlying claim." *Acorn Tech.*, 429 F.3d at 443. "A district court need only determine whether the party has *colorable* claims to assert which justify lifting the receivership stay." *Id.* at 444. Paul's counterclaims consist of unsupported, conclusory statements such as, "Defendant has suffered extensive damages as the direct result of being subjected to . . . misdeeds, transgressions and illegal activities, including the criminal Stinson Ponzi Scheme" and "Defendant has suffered direct harm and damages, as a direct result of breaches of contracts by Stinson . . . ." (Answer ¶¶ 10, 11.) Paul fails to provide the Court with any details, dates, underlying facts, or specific losses attributable to these alleged breaches. Therefore, the Court finds that Paul's unsupported claims that he was a victim of the Stinson Ponzi scheme lack merit.

However, even assuming the underlying claims are colorable and Paul is one of the many Stinson Ponzi scheme victims, the Court concludes that lifting the stay is not warranted due to the

5

weight of the other factors. *See Acorn Tech.*, 429 F.3d at 443-44 ("[V]ery early in a receivership even the most meritorious claims might fail to justify lifting a stay given the possible disruption of the receiver's duties."); *Illarramendi*, 2012 WL 234016, at *6 ("[C]ourts are generally unwilling to delve deeply into the merits where the first two factors weigh heavily in favor of maintaining the litigation stay."). Paul has not met his burden of proving "that the balance of the factors weighs in favor of lifting the stay." *See Illarramendi*, 2012 WL 234016, at *4.

### III.   CONCLUSION

For the reasons stated, the Court grants the Receiver's Motion to Dismiss Defendant Paul Roger's Counterclaims. An Order consistent with this Memorandum will be docketed separately.