## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KAMIAN SCHWARTZMAN, in his** | : | |
| **capacity as Receiver,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ROGUE INTERNATIONAL TALENT** | : | |
| **GROUP, INC., et al.,** | : | **No. 12-5255** |
| Defendants. | : | |

## <u>MEMORANDUM</u>

**Schiller, J.**                                                                     **November 7, 2013**

Kamian Schwartzman, acting as Receiver for the receivership estate established by the Court in *SEC v. Stinson*, brings claims for fraudulent transfer, unjust enrichment, and equitable accounting against Rogue International Talent Group, Inc. ("Rogue"). The Receiver also seeks to pierce the corporate veil of Roger Paul, Inc. ("RPI") to hold RPI liable for any judgment against Rogue. Before the Court is the Receiver's Motion for Default Judgment against Rogue and RPI in the amount of $81,861.89. For the following reasons, the Court grants the motion.

## I.        BACKGROUND

By Order dated September 13, 2010, this Court established a receivership estate to recover funds stolen in a Ponzi scheme perpetrated by Robert Stinson. (Order Establishing Receivership Estate, *SEC v. Stinson*, Civ. A. No. 10-3130, Document No. 29.) On September 12, 2012, the Receiver sued to recover funds allegedly transferred from Stinson entities involved in the Ponzi scheme ("Stinson entities") to Roger Paul ("Paul") and entities that he allegedly controlled, Rogue and RPI. (Compl. ¶¶ 12, 46.) Rogue operates as a talent and entertainment agency primarily representing actors and comedians. (*Id.* ¶ 15.) RPI is a "successor entity to

Rogue," and it "serves the same business purpose as Rogue and maintains the same clientele." (*Id.* ¶ 16.) The Receiver alleges that Stinson entities transferred $143,273.44 to or for the benefit of Paul, Rogue, and RPI between November 2009 and July 2010.[1] (Pl.'s Mot. for Summ. J. 1; Pl.'s Statement of Undisputed Material Facts in Supp. of Mot. for Summ. J. ¶ 14.)

According to the docket, RPI was properly served on September 24, 2012, and Rogue was properly served on October 11, 2012. Neither RPI nor Rogue has answered. On October 8, 2013, the Clerk of Court entered a default against RPI and Rogue. On October 18, 2013, the Receiver moved for default judgment against Rogue and RPI in the amount of $81,861.89. To date, Rogue and RPI have not responded.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 55(b)(2) provides that a district court may enter default judgment against a party when default has been entered by the Clerk of Court. Before entering default judgment, the court must determine that the unchallenged facts set forth in the complaint establish a legitimate cause of action, since a party in default does not admit mere conclusions of law. *Carroll v. Stettler*, Civ. A. No. 10-2262, 2012 WL 3279213, at *2 (E.D. Pa. Aug. 10, 2012); *Bricklayers & Allied Craftworkers Local 1 v. WaterControl Servs., Inc.*, Civ. A. No. 09-3935, 2012 WL 3104437, at *3 (E.D. Pa. July 30, 2012). In addition, the court must consider three factors when deciding whether to grant default judgment: (1) prejudice to the plaintiff if default judgment is denied; (2) whether the defendant appears to have a litigable defense; and (3)

---

[1] The Complaint alleges that Defendants received benefits worth $136,057.16, rather than $143,273.44, from Stinson entities. (Compl. ¶ 11.) However, the evidence provided by the Receiver in his Motion for Summary Judgment clarifies that Stinson entities transferred $143,273.44 to or for the benefit of Defendants. Although the Court is not now ruling on the Receiver's Motion for Summary Judgment, the Receiver incorporates into his Motion for Default Judgment his Statement of Undisputed Material Facts in support of his Motion for Summary Judgment. (Aff. of Kamian Schwartzman in Supp. of Mot. for Default J. ¶ 4.)

whether the defendant's delay is due to culpable conduct. *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

## III.     DISCUSSION

### A.     The Complaint Establishes Legitimate Causes of Action

The Receiver brings claims against Rogue for fraudulent transfer pursuant to the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA"), for unjust enrichment, and for an equitable accounting. (Compl. ¶¶ 32-44, 64-69) The Receiver also seeks to pierce RPI's corporate veil to hold it liable for Rogue's debts. (Compl. ¶¶ 45-52.) For the following reasons, the Court finds that the unchallenged factual allegations of the Complaint establish legitimate causes of action against Rogue and RPI.

#### i.     *Rogue*

The facts in the Complaint, accepted as true, entitle the Receiver to recover under PUFTA the money that Stinson entities paid for the benefit of Rogue. PUFTA allows a creditor such as the Receiver to obtain avoidance of a "transfer" made to another party with "actual intent to . . . defraud." 12 PA. CONS. STAT. §§ 5104(a), 5107(a). A transfer is "[e]very mode . . . of disposing of or parting with an asset or an interest in an asset," including the payment of money. *Id.* § 5101(b). Actual fraudulent intent is established through the mere existence of a Ponzi scheme. *Hecht v. Malvern Preparatory Sch.*, 716 F. Supp. 2d 395, 400 (E.D. Pa. 2010); *see also SEC v. Forte*, Civ. A. Nos. 09-63, 09-64, 2010 WL 939042, at *5 (E.D. Pa. Mar. 17, 2010). Judgment may be entered against "the first transferee of the asset or the person for whose benefit the transfer was made," among other parties. 12 PA. CONS. STAT. § 5108(b).

The Complaint adequately pleads the elements of a PUFTA claim. Because this Court has already determined that Stinson entities operated a Ponzi scheme, transfers by Stinson entities are presumptively fraudulent. *See Hecht*, 716 F. Supp. 2d at 400-01. In November 2009, Paul and Stinson entered into a written agreement providing that Stinson entities would fund Paul's and Rogue's operations. (Compl. ¶ 25 & Ex. C [Stinson Letter to Paul].) Between November 2009 and July 2010, Stinson entities paid for office space, salaries, and other goods and services for Paul and Rogue, without receiving anything of value from Paul or Rogue. (Compl. ¶¶ 6-12, 26.) Although the initial transferees included Rogue employees and commercial entities such as Staples and Walmart (Pl.'s Mot. for Summ. J. Exs. G, I), the Complaint asserts that these transfers were made for the benefit of Rogue. (*See* Compl. ¶ 26.); *see also* 12 PA. CONS. STAT. § 5108(b) ("[J]udgment may be entered against . . . the person for whose benefit the transfer was made . . . ."). Therefore, the factual allegations in the Complaint establish a legitimate claim against Rogue for fraudulent transfer under PUFTA. Because the Receiver's PUFTA claim entitles him to the full relief he is seeking, the Court need not examine the legitimacy of the Receiver's unjust enrichment and equitable accounting claims.

ii.   RPI

The unchallenged facts in the Complaint also support a finding that RPI is liable for the transfers to Rogue. Although the Receiver claims that RPI should be held liable under a veil-piercing theory, the Court does not reach this question because the Receiver has alleged sufficient facts to hold RPI liable under PUFTA. Under PUFTA, a creditor may recover judgment against "the person for whose benefit the transfer was made." 12 PA. CONS. STAT. § 5108(b). The definition of "person" includes a "corporation" or "any other legal or commercial entity." *Id*. § 5101(b). The Receiver alleges sufficient facts to state a claim that RPI benefited

from transfers to Rogue. In particular, the Receiver alleges that RPI is a "successor entity to and continuation of Rogue;" that Paul controls both entities; that the entities' assets were commingled; and that the entities have the same clientele and the same business model and operate out of the same building. (Compl. ¶¶ 46-52.) Therefore, the unchallenged factual allegations in the Complaint establish a legitimate claim against RPI for fraudulent transfer under PUFTA. *See Carroll v. Stettler*, Civ. A. No. 10-2262, 2010 WL 4611450, at *3 (E.D. Pa. Nov. 12, 2010) (declining to address a veil-piercing claim in considering a motion to dismiss because the plaintiffs alleged sufficient facts to hold defendants liable under PUFTA).

**B.     Default Judgment Is Proper**

Because the Court finds that the Complaint states claims against Rogue and RPI, it must now assess the three *Chamberlain* factors to determine whether default judgment is proper. *See Chamberlain*, 210 F.3d at 164. The first factor requires the Court to determine whether the Receiver will be prejudiced if default judgment is denied. "A plaintiff is prejudiced if denying the default judgment would result in the loss of evidence or impair the plaintiff's ability to effectively pursue his or her claim." *Carroll*, 2012 WL 3279213, at *2. While a minimal delay is not prejudicial, a considerable delay may constitute prejudice. *Compare Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987) (finding that the defendant's six-week delay in filing an answer did not constitute prejudice) *with Carroll*, 2012 WL 3279213, at *3 (finding that a two-year delay in filing an answer was prejudicial). Prejudice is particularly likely where the defendants do not answer at all, and the delay threatens to stretch on indefinitely. *See Grove v. Rizzi 1857 S.P.A.*, Civ. A. No. 04-2053, 2013 WL 943283, at *2 (E.D. Pa. Mar. 12, 2013); *Carroll*, 2012 WL 3279213, at *3.

In this case, Rogue and RPI have delayed the proceedings nearly fourteen months by failing to answer the Complaint. Because the Court has no reason to believe Rogue and RPI will ever respond, and because the Receiver has no way of recovering from these parties unless default judgment is entered, this factor weighs in favor of granting default judgment.

The second factor that the Court must consider is whether the defendants have any meritorious defenses. *Chamberlain*, 210 F.3d at 164. "Courts often weigh this factor in favor of granting default judgment where a party has failed to answer claims against it." *Grove*, 2013 WL 943283, at *3; *see also E. Elec. Corp. of N.J. v. Shoemaker Constr. Co.*, 657 F. Supp. 2d 545, 553 (E.D. Pa. 2009). Because Rogue and RPI failed to file answers to the Complaint or responses to the Motion for Default Judgment, they have asserted no meritorious defenses. Therefore, this factor weighs in favor of default judgment.

The third factor requires the Court to consider the culpability of the defendants' conduct. *See Chamberlain*, 210 F.3d at 164. The Third Circuit has held that "willfulness" or "bad faith," but not negligence, is culpable. *Hritz v. Woma Corp*., 732 F.2d 1178, 1183 (3d Cir. 1984). Bad faith may be presumed if a defendant offers no reason for its failure to engage in the litigation process. *See E. Elec. Corp. of N.J.*, 657 F. Supp. 2d at 554; *see also Fed. Ins. Co. v. Secure Cargo Corp.*, Civ. A. No. 12-851, 2013 WL 1222653, at *3 (D.N.J. Mar. 25, 2013) ("Defendants' failure to respond permits the Court to draw an inference of culpability on their part."). As noted above, Rogue and RPI have failed to respond to the Complaint for nearly fourteen months. They also failed to respond to the Clerk's entry of default against them and to the Receiver's Motion for Default Judgment. Without an explanation from Rogue and RPI, the Court finds that they are culpable.

Based on its evaluation of the three *Chamberlain* factors, the Court will exercise its discretion to enter default judgment. The Court finds that default judgment is necessary to prevent Rogue and RPI from profiting from the Stinson scheme to the detriment of the scheme's victims.

### C.      Damages

"Where a court enters a default judgment, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005). The court may calculate damages by conducting a hearing or by receiving evidence or detailed affidavits from the claimant. *E. Elec. Corp. of N.J.*, 657 F. Supp. 2d at 552; *Amresco Fin. I L.P. v. Storti*, Civ. A. No. 99-2613, 2000 WL 284203, at *2 (E.D. Pa. Mar. 13, 2000). The damage calculation need only be reasonable; it need not meet a standard of mathematical certainty. *E. Elec. Corp. of N.J.*, 657 F. Supp. 2d at 552. For the following reasons, the Court finds that evidence presented by the Receiver is sufficient to establish damages of $81,861.89.

Under PUFTA, "to the extent a transfer is voidable . . . , the creditor may recover judgment for the value of the asset transferred," which is the "value of the asset at the time of the transfer, subject to adjustment as the equities may require." 12 PA. CONS. STAT. § 5108(b)-(c). The Receiver presents evidence that Stinson entities transferred $81,861.89 to Rogue or to third parties for Rogue's benefit. A lease and bank records reflect that in May 2010, Stinson entities paid $18,343.10 for rental property occupied by Rogue. (Pl.'s Mot. for Summ. J. Ex. E at 8 [Lease]; Ex. F at 25 [Lease Bank Record].) Order forms, checks, receipts, and bank statements reflect that between December 2009 and June 2010, Stinson entities spent $18,677.79 on office

and computer supplies for Rogue (Pl.'s Mot. for Summ. J. Ex. I), and $5,919.65 on parking spots, keys, phones, telecommunications, and printing for Rogue (Pl.'s Mot. for Summ. J. Ex. F).

Finally, the Receiver adequately supports his claim that Stinson entities paid a total of $38,921.35 in salaries to Rogue employees. That figure is established by copies of checks from Stinson entities to Michael Bailey Sr., Maurice Thomas, Kenneth Lampkin, and Lisa Roina between November 2009 and June 2010. (Pl.'s Mot. for Summ. J. Ex. G at 2-38.) The Court deems admitted that these individuals worked on behalf of Rogue and/or RPI between November 2009 and June 2010. (Pl.'s First Set of Reqs. for Admis. ¶¶ 7-10, Pl.'s Mot. for Summ. J. Ex. N at 23-24); *see also* Fed R. Civ. P. 36(a) (allowing a court to deem admitted matters addressed in a request for admission if the party to whom the request is directed fails to serve a written answer or objection within thirty days after being served).

IV.     **CONCLUSION**

For the reasons stated, the Court enters judgment in favor of the Receiver and against Rogue and RPI in the amount of $81,861.89. An Order consistent with this Memorandum will be docketed separately.