IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAMIAN SCHWARTZMAN, in his capacity as Receiver, | : : : | CIVIL ACTION |
| Plaintiff, | : : | |
| v. | : : | |
| ROGUE INTERNATIONAL TALENT GROUP, INC., et al., Defendants. | : : : | No. 12-5255 |

**MEMORANDUM**

**Schiller, J.**                                                                 **August 13, 2014**

Kamian Schwartzman, in his capacity as Receiver for the Receivership Estate established by the Court in *SEC v. Stinson*, Civ. A. No. 10-3130, brought this action to recover stolen funds received by Defendants Roger Paul, Inc. ("RPI"), Rogue International Talent Group, Inc. ("Rogue"), Roger Paul ("Paul"), High Idea Corp., LLC ("High Idea"), and Dustin Diamond ("Diamond"). Currently before the Court is the Receiver's motion for summary judgment on his claims for fraudulent transfer, unjust enrichment, and equitable accounting against Defendants Paul, RPI, and Rogue, and Paul's cross-motion for summary judgment.[1] Because the Court has granted default judgment for the Receiver against Rogue and RPI, the Court will deny as moot the Receiver's motion for summary judgment against Rogue and RPI. For the following reasons, the Court grants summary judgment to the Receiver on his claim of fraudulent transfer against Paul for $61,411.55. The Court denies summary judgment on the Receiver's claim that the Court should pierce the veils of Rogue and RPI to hold Paul liable for the debts of those companies.

---

[1] Although Paul filed this motion on behalf of himself, Rogue and RPI, Paul has not entered an appearance as the lawyer for Rogue or RPI. Therefore, the Court will treat this motion as filed on behalf of Paul alone.

**I.      BACKGROUND**

The Receiver filed this action on September 12, 2012, alleging that Rogue, RPI, Paul, High Idea, and Diamond received stolen funds that originated from a Ponzi scheme perpetrated by Robert Stinson, Jr. Through the Ponzi scheme, Stinson and the entities that he controlled obtained over $17 million from at least 262 investors. *SEC v. Stinson*, Civ. A. No. 10-3130, 2011 WL 2462038, at *1 (E.D. Pa. June 20, 2011). Following an SEC investigation and civil enforcement action, the Court appointed the Receiver to recover funds that investors lost in Stinson's scheme. *See id.* at *2.

The Receiver alleges that $143,273.44 in the form of services, property, and cash was transferred from Stinson's entities to Paul, Rogue, RPI, High Idea, and Diamond.[2] On July 3, 2013, the Court granted the Receiver's motion for default judgment against High Idea and Diamond for $40,000. *Schwartzman v. Rogue Int'l Talent Group, Inc.*, Civ. A. No. 12-5255, 2013 WL 3367262, at *1 (E.D. Pa. July 3, 2013). On November 7, 2013, the Court granted the Receiver's motion for default judgment against Rogue and RPI for $81,861.89. *Schwartzman v. Rogue Int'l Talent Group, Inc.*, Civ. A. No. 12-5255, 2013 WL 5948028, at *1 (E.D. Pa. Nov. 7, 2013). The Receiver now seeks judgment against Paul, Rogue, and RPI in the amount of $143,273.44, plus pre- and post-judgment interest and court costs. The Receiver requests that a constructive trust be imposed on the assets of Paul, Rogue, and RPI in the amount of $143,273.44, and that these Defendants be enjoined from transferring or disposing of any assets.

---

[2] The Complaint alleges that Defendants received benefits worth $136,057.16, rather than $143,273.44, from Stinson's entities. (Compl. ¶ 11.) However, the evidence provided by the Receiver in his motion for summary judgment clarifies that Stinson's entities transferred $143,273.44 to, or for the benefit of, Defendants.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the moving party bears the burden of persuasion at trial, it must identify evidence in the record establishing the absence of a genuine factual issue. *Nat'l State Bank v. Fed. Reserve Bank*, 979 F.2d 1579, 1582 (3d Cir. 1992). When the moving party does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thereafter, the nonmoving party demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable finder of fact to find for the nonmoving party at trial. *Anderson*, 477 U.S. at 248.

In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 655 (3d Cir. 2002). A court must apply the same standards to cross-motions for summary judgment. *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008).

### III. DISCUSSION

#### A. Fraudulent Transfer

The Receiver brings his fraudulent transfer claim under the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA"). PUFTA allows a creditor to obtain avoidance of a "transfer" made to another party with "actual intent to . . . defraud." 12 Pa. Cons. Stat. §§ 5104(a), 5107(a). A transfer is "[e]very mode . . . of disposing of or parting with an asset or an interest in an asset," including the payment of money. *Id.* § 5101(b). Actual fraudulent intent is established through the mere existence of a Ponzi scheme. *Hecht v. Malvern Preparatory Sch.*, 716 F. Supp. 2d 395, 400 (E.D. Pa. 2010); *see also SEC v. Forte*, Civ. A. Nos. 09-63, 09-64, 2010 WL 939042, at *5 (E.D. Pa. Mar. 17, 2010). Therefore, a creditor establishes a prima facie claim under PUFTA by showing that money was transferred from a fund that operated as a Ponzi scheme.

As an affirmative defense under PUFTA, the transferee may claim that he took the money "in good faith and for a reasonably equivalent value." 12 Pa. Cons. Stat. § 5108(a); *see also id.* Committee Cmt. 1 (stating that the transferee bears the burden of establishing both his good faith and the reasonable equivalence of the consideration exchanged).

If the creditor prevails under PUFTA, his remedies include, *inter alia*, avoidance of the transfer, attachment of the transferred asset or other property of the transferee, an injunction against future transfers, or any other relief that the circumstances may require. *Id.* § 5107(a). Judgment may be entered against "the first transferee of the asset or the person for whose benefit the transfer was made," among other parties. *Id.* § 5108(b).

The Court finds that the Receiver has established a fraudulent transfer claim against Paul in the amount of $61,411.55. The Receiver has established that Stinson's entities transferred

$40,000 by check to Paul, who transferred that money to Diamond and High Idea. (Pl.'s Mot. for Summ. J. [Pl.'s Mot.] Statement of Undisputed Material Facts [SOF] ¶ 20, Exs. J [Check], K [Promissory Note].) The Receiver has also established that Stinson's entities paid $21,411.55 directly to Paul in the form of checks. (SOF ¶ 18, Ex. H [Checks] at 2-20.) Paul concedes that he received transfers from Stinson's entities. (Def. Paul's Opp. at 8.) Because this Court has already determined that Stinson's entities operated a Ponzi scheme, the transfers from Stinson's entities to Paul are presumptively fraudulent. *See Hecht*, 716 F. Supp. 2d at 400-01.

In addition, Paul has not demonstrated that he took the money "in good faith and for a reasonably equivalent value." *See* 12 Pa. Cons. Stat. § 5108(a). Paul did not expressly raise this good-faith affirmative defense in his Answer. However, he now argues that he was unaware that Stinson's business was a Ponzi scheme, and he argues that he gave "equivalent value" to Stinson's entities in exchange for the transfers. (Def. Paul's Opp. at 8.) Paul does not point to any evidence in the record to support these assertions. (*Id*.) Even if Paul adequately raised a good-faith affirmative defense under PUFTA, he has not met his burden of demonstrating a genuine issue of fact with respect to both elements of that defense. *See Anderson*, 477 U.S. at 248.

That this Court has already granted default judgment against Diamond and High Idea in the amount of $40,000 does not support a reduction in damages as against Paul. Recipients of fraudulent transfers may be held jointly and severally liable under PUFTA. *See Titus v. Shearer*, 498 B.R. 508, 522-23 (W.D. Pa. 2013). Therefore, the Receiver succeeds on his fraudulent transfer claim against Paul in the amount of $61,411.55.

## B.     Veil Piercing

The Receiver seeks judgment against Paul in the amount of $143,273.44. That figure includes transfers to Paul in the amount of $61,411.55 and transfers to Rogue and RPI in the amount of $81,861.89. As noted above, the Receiver obtained default judgment against Rogue and RPI in the amount of $81,861.89.

The Receiver argues that the Court should pierce the corporate veils of Rogue and RPI to hold Paul liable for those companies' debts because those companies were Paul's alter egos. (Pl.'s Mot. at 6-7.) In Pennsylvania, veil piercing is "an equitable remedy whereby a court disregards the existence of the corporation to make the corporation's individual principals and their personal assets liable for the debts of the corporation." *In re Blatstein*, 192 F.3d 88, 100 (3d Cir. 1999). When deciding whether to pierce the corporate veil, courts balance a number of factors, including: (1) the failure to observe corporate formalities; (2) the non-payment of dividends; (3) the insolvency of the debtor corporation at the time; (4) the siphoning of funds of the corporation by the dominant shareholder; (5) the non-functioning of other officers or directors; (6) the absence of corporate records; and (7) the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders. *Id*. The party seeking to pierce the corporate veil must demonstrate through clear and convincing evidence that the corporate veil should be pierced. *Siematic Mobelwerke GmbH & Co. KG v. Siematic Corp.*, 643 F. Supp. 2d 675, 695 (E.D. Pa. 2009). There is a strong presumption against piercing the corporate veil in Pennsylvania. *Lumax Industries, Inc. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995). In addition, the fact-specific nature of the veil piercing analysis counsels for submitting the question of corporate disregard to the jury. *See Peltz Boxing Promotions, Inc. v. Big Fights, Inc.*, Civ. A. No. 02-2062, 2004 WL 2137823, at *1 n.1 (E.D. Pa. Sept. 23, 2004).

According to the Complaint, the following factors support veil piercing here: (1) Paul controls both RPI and Rogue; (2) both entities were undercapitalized relative to the business within which they sought to engage; (3) the entities were used to perpetuate fraud; and (4) Paul treated the assets of Rogue and RPI as though they were his own. (Compl. ¶¶ 46-52; SOF ¶ 30.) The Receiver asks the Court to find that Paul admitted these allegations in the Complaint because he failed to deny them in his Answer. (Pl.'s Mot. at 7.) Because Paul proceeds *pro se*, the Court will not deem all unanswered allegations as admitted pursuant to Federal Rule of Civil Procedure 8. *See* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."); *see also United States v. Allgyer*, Civ. A. No. 11-2651, 2012 WL 355261, at *1 n.5 (E.D. Pa. Feb. 3, 2012) (refusing to deem admitted under Rule 8 unanswered allegations where defendant was unrepresented by counsel).

In addition, the evidentiary record does not establish the absence of a genuine factual issue with respect to the Receiver's veil piercing claim. The evidence establishes only one of the factors that courts have considered relevant to a veil piercing claim: Rogue did not keep corporate records. (Pl.'s Supplemental Statement of Undisputed Material Facts Ex. O [Paul Dep.] at 28-29.) Because the record does not demonstrate any of the other factors relevant to a veil piercing claim, the Receiver cannot establish as a matter of law that he is entitled to hold Paul liable for the debts of Rogue and RPI. *See Nat'l State Bank*, 979 F.2d at 1582.

However, Paul is not entitled to summary judgment on the veil piercing claim because he did not respond to several of the Receiver's discovery requests for information on that issue. (Pl.'s Mot. Ex. M [Decl. of Francesco P. Trapani]; Pl.'s Mot. Ex. O [First Set of Interrogs.] at 8, 9; Pl.'s Mot. Ex. P [Request for Production of Docs.] at 8, 9). When the nonmoving party has not had an adequate opportunity to discover evidence essential to its opposition, a summary

judgment motion should be denied. *Killian v. McCulloch*, 850 F. Supp. 1239, 1256 (E.D. Pa. 1994).

**IV. CONCLUSION**

      The Court will grant the Receiver's motion for summary judgment on his fraudulent transfer claim against Paul in the amount of $61,411.55. The Court will also impose a constructive trust on Paul's assets in the amount of $61,411.55 and enjoin Paul from transferring or disposing of any assets. *See* 12 Pa. Cons. Stat. § 5107. It is not necessary for the Court to reach the Receiver's unjust enrichment and equitable accounting claims because he is entitled to relief of $61,411.55 based on the fraudulent transfer claim alone. The Court further finds that there is a genuine factual issue as to whether Paul may be held liable for Rogue's and RPI's debts under a veil piercing claim. Therefore, the Court will not grant summary judgment against Paul for the $81,861.89 that was transferred to, or for the benefit of, Rogue and RPI. An Order consistent with this Memorandum will be docketed separately.